## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MADHAVI ANANTH,

          *Plaintiff*,

    v.

MARCIA L. FUDGE,

          *Defendant*.

Civil Action No. 23-2262 (LLA)

## MEMORANDUM OPINION AND ORDER

Plaintiff Madhavi Ananth filed this employment discrimination action against Defendant Marcia L. Fudge in her official capacity as Secretary of Housing and Urban Development ("HUD"), alleging violations of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*  ECF No. 1. Ms. Ananth now moves for leave to file an amended complaint.  ECF No. 11.  For the reasons explained below, the court will grant Ms. Ananth's motion.

### I.      Factual Background

Given the procedural posture, the court provides only a brief summary of the underlying facts, drawn from Ms. Ananth's proposed amended complaint.  ECF No. 11-1.

In 2014, Ms. Ananth began working for HUD as a Counterparty Risk Analyst at the Office of Government National Mortgage Association ("Ginnie Mae").  *Id.* ¶ 29.  Around July 2016, she began developing symptoms of Neurogenic Thoracic Outlet Syndrome, Occipital Neuralgia, and Peripheral Nerve Compression.  *Id.*  ¶ 23.  These conditions significantly limit Ms. Ananth's "ability to perform prolonged repetitive work such as keyboarding without taking breaks, push, pull, lift, and carry things with her right arm, as well as her ability to commute to work in-person on a regular basis and bearing excessive pressure around her head[] such as headphones."  *Id.* ¶ 24.

In 2016, pursuant to a settlement agreement, HUD transferred Ms. Ananth to its Economic Modeling and Analysis Division to work as a GS-14 Senior Researcher (Interdisciplinary). *Id.* ¶¶ 30, 32. After her transfer, Ms. Ananth's first-level supervisor was Mingchao Chen, and her second-level supervisor was Gregory Keith. *Id.* ¶¶ 34-35. Ms. Ananth alleges that, from 2017 until she left HUD in August 2022, Ms. Chen and Mr. Keith failed to reasonably accommodate her disability, discriminated against her because of her disability, retaliated against her for engaging in protected activity, and created a hostile work environment. *See generally* ECF No. 11-1.

Between 2019 and 2022, Ms. Ananth filed three Equal Employment Opportunity ("EEO") complaints alleging disability discrimination. *Id.* ¶¶ 5-16. The court describes each in turn.

### A.    HUD-00004-2020

Ms. Ananth initiated EEO counseling for her first complaint, HUD-00004-2020 ("First EEO Complaint") in October 2019 and filed a formal complaint in January 2020. *Id.* ¶¶ 5-6. The First EEO Complaint initially alleged disability discrimination and retaliation and enumerated fifty-five discrete incidents of alleged discrimination. *See* ECF No. 15-5 (Pl. Ex. 1), at 4-21. Broadly, Ms. Ananth claimed that Ms. Chen harassed her for attending medical appointments, taking sick leave, and exercising her reasonable accommodations; pressured her to manage "an extreme workload," including significant overtime; interfered with her reasonable accommodations, including telework; and made negative comments during her performance review. *See id.* at 6-8.

In March 2020, Ms. Ananth requested that HUD amend her complaint to add seven new incidents that occurred between January and March 2020. *Id.* at 23-25. HUD provided a Notice of Partial Acceptance, accepting certain new incidents but dismissing others as untimely. *Id.* at 26-30. Ms. Ananth contested the partial dismissal. *See id.* at 31-32. EEOC Administrative

Judge Laurie Bennett ultimately ordered that some of those dismissed claims be reinstated.  *See* ECF No. 15-6 (Pl. Ex. 2), at 6 n.2.

Ms. Ananth requested to amend her complaint three additional times to add new incidents of alleged discrimination.  *See* ECF No. 15-5 (Pl. Ex. 1), at 38-40 (April 23, 2020 request), 45-47 (May 29, 2020 request), 52-54 (September 20, 2020 request).  HUD accepted each of those requests and amended the First EEO Complaint accordingly.  *See id.* at 41-43 (May 6, 2020 notice of amendment), 48-50 (June 19, 2020 notice of amendment), 56-57 (September 29, 2020 notice of amendment).  Ultimately, HUD accepted four categories of claims for adjudication:

- Claim A: disability discrimination and retaliation related to failure to respond to or grant reasonable accommodation requests, and failure to engage in the interactive process.
- Claim B: disability discrimination, disparate treatment, and retaliation related to performance reviews, training, interference with a medical break, and overtime work.
- Claim C: hostile work environment claim comprised of fifty-one discrete allegations.
- Claim D: disability discrimination, disparate treatment, and retaliation related to training, and a hostile work environment claim arising from an October 2018 denial of reasonable accommodation.

ECF No. 15-6 (Pl. Ex. 2), at 2-6.

### B.     HUD-00008-2021

Ms. Ananth contacted the EEO office to file a second complaint, HUD-00008-2021 ("Second EEO Complaint") in November 2020, and filed a formal complaint in February 2021.  ECF No. 11-1 ¶¶ 10-11.  Her Second EEO Complaint alleged continued disability discrimination and retaliation, claiming that Ms. Chen's harassment and retaliation "immensely increased" after Ms. Ananth took FMLA leave and filed her First EEO Complaint.  *See* ECF No. 15-7 (Pl. Ex. 3), at 7-14.  HUD accepted her claims for investigation in April 2021.  *Id.* at 17-18.

Ms. Ananth filed six subsequent requests to amend her Second EEO Complaint, adding new incidents of alleged discrimination. *See id.* at 25-26 (April 1, 2021 request), 29 (June 29, 2021 request), 33-34 (August 8, 2021 request), 40 (September 27, 2021 request), 41 (November 24, 2021 request), 42 (December 2, 2021 request); ECF No. 15 ¶¶ 22-30.[1]   HUD accepted each of these requests for amendment. *See* ECF No. 15-7 (Pl. Ex. 3), at 27-28 (April 14, 2021 notice of amendment), 30-31 (July 23, 2021 notice of amendment), 35-36 (August 27, 2021 notice of amendment), 59-61 (January 3, 2022 revised notice of amendment); ECF No. 15 ¶¶ 22-30. Ultimately, HUD accepted nineteen discrete disability discrimination, retaliation, and hostile work environment claims for adjudication. *See* ECF No. 15-8 (Pl. Ex. 4), at 2-3.

### C.   HUD-00033-2022

Ms. Ananth contacted the EEO to file a third complaint, HUD-00033-2022 ("Third EEO Complaint") in March 2022, and filed a formal complaint in May 2022. ECF No. 11-1 ¶¶ 15-16. Her Third EEO Complaint alleged continued disability discrimination, retaliation, and harassment. *See* ECF No. 15-9 (Pl. Ex. 5), at 6. HUD accepted her claims for investigation on June 10, 2022. *Id.* at 13-14.

In August 2022, Ms. Ananth requested to amend her Third EEO Complaint to include one new incident. *Id.* at 27. HUD accepted the claim for investigation in September 2022. *Id.* at 28-30.

---

[1] It appears that Ms. Ananth also requested to amend her Second EEO Complaint on January 21, 2022, alleging that HUD suspended her for 14 days. *See* ECF No. 15-7 (Pl. Ex. 3), at 62-65. That allegation ultimately became part of Ms. Ananth's Third EEO Complaint. *See* ECF No. 15-9 (Pl. Ex. 5), at 6 ¶ 1(a).

## II.      Procedural History

Ms. Ananth filed this suit on August 4, 2023, alleging that HUD had violated the Rehabilitation Act by failing to accommodate her disabilities, discriminating and retaliating against her on the basis of disability, and creating a hostile work environment.  ECF No. 1 ¶¶ 128-53.  After HUD filed a motion to dismiss in part or, in the alternative, for summary judgment in part, ECF No. 5, Ms. Ananth moved for leave to file an amended complaint, ECF No. 11.  The proposed amended complaint, per Ms. Ananth, addresses the deficiencies HUD identified in its motion to dismiss, "provides specific examples of how her accommodations were denied," and "provides more detail to explain how her claims are actionable."  ECF No. 11 ¶ 5. The proposed amended complaint also adds a claim for "interference in reasonable accommodations."  *See* ECF No. 11-1 ¶¶ 301-07.  HUD filed an opposition urging the court to deny Ms. Ananth's motion because amendment would be futile, ECF No. 13, and Ms. Ananth filed a reply, *see* ECF Nos. 15 & 16.

## III.      Legal Standard

Pursuant to Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course, and thereafter "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a).  The court should freely grant such leave "when justice so requires." *Id.*   "[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  However, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment.'"  *Id.* (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "If the district court denies leave [to amend], it must state its reasons."  *Barkley v. U.S. Marshals*

*Serv. ex rel. Hylton*, 766 F.3d 25, 38 (D.C. Cir. 2014).   "[U]nder Rule 15, 'the non-movant generally carries the burden in persuading the court to deny leave to amend.'"   *In Lux Rsch. v. Hull McGuire PC*, No. 23-CV-523, 2023 WL 8190821, at *2 (D.D.C. Nov. 27, 2023) (quoting *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004)).

An amendment is futile "if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).   To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is facially plausible when the plaintiff pleads facts that are more than "'merely consistent with' a defendant's liability," *id.* (quoting *Twombly*, 550 U.S. at 557), and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 663 (quoting *Twombly*, 550 U.S. at 556).   In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## IV.    Discussion

HUD argues that the court should deny Ms. Ananth leave to file an amended complaint because such amendment would be futile.   ECF No. 13.   It contends that Ms. Ananth failed to administratively exhaust her failure to accommodate, interference with accommodation, discrimination, and retaliation claims—and that the amended complaint cannot cure this defect.

6

*Id.* at 8-15.  HUD also argues that the amended complaint fails to sufficiently allege a hostile work environment.  *Id.* at 15-18.  The court considers each argument in turn.

### A.  Administrative Exhaustion

"The Rehabilitation Act requires individuals to exhaust administrative remedies before they can file suit to enforce the Act's protections. . . .  For claims against federal agencies, exhaustion requires submitting a claim to the employing agency itself."  *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015).  To do so, the employee must—within forty-five days of the allegedly discriminatory incident—contact an EEO counselor.  *See id.*; *see also* 29 C.F.R. § 1614.105(a).  If informal counseling does not resolve the matter, the employee may file a complaint, which the agency investigates and adjudicates.  *See Doak*, 798 F.3d at 1099-1100; *see also* 29 C.F.R. § 1614.106.  "A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint."  29 C.F.R. § 1614.106(d).  The agency must "acknowledge receipt of . . . an amendment to a complaint in writing."  *Id.* § 1614.106(e).  A plaintiff can exhaust her administrative remedies by successfully amending her EEO complaint; doing so puts the defendant-employer on notice of the conduct at issue.  *See Sanders v. Kerry*, 180 F. Supp. 3d 35, 43 (D.D.C. 2016) (collecting cases); *see also Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007) (holding that the plaintiff exhausted her administrative remedies by amending her EEO complaint).

Looking to the entire administrative record—including Ms. Ananth's many amendments which HUD accepted for investigation—the court finds enough record evidence to conclude, for purposes of granting leave to amend her complaint, that Ms. Ananth exhausted her administrative remedies.  *See Allen v. Cnty. of Lake*, No. 14-CV-3934, 2014 WL 6467313, at *2 (N.D. Cal. Nov. 17, 2014) ("[A] finding that amendment is not futile is not the same as finding that a complaint should not be dismissed for failure to state a claim. . . . [The court] reserves judgment

on whether any claims should be dismissed until that question has been adequately briefed by all

parties."). The relevant citations to the administrative record are enumerated in an appendix to

this opinion. *See* App. A. To the extent that HUD reads the administrative record differently and

believes that certain of Ms. Ananth's claims were not properly exhausted or are untimely, it may

raise those arguments in future dispositive motions.[2]

### 1.       Failure to accommodate

According to HUD, "[t]he proposed Amended Complaint repeatedly refers to

accommodation requests that were not raised at the administrative level, i.e., from November and

December 2019, November 2020, and November 2021." ECF No. 13, at 10. The agency

identifies twenty paragraphs in the proposed Amended Complaint that raise unexhausted incidents:

86-87, 90, 99-100, 162, 210-12, 266-67, 295-96, 298-99, 312-13, 325, and 356-57. *See id.* The

---

[2] In assessing exhaustion, the court considers all of Ms. Ananth's exhibits. *See* ECF No. 15. In the context of administrative exhaustion, district courts routinely take notice of the plaintiff's EEO complaint and notice of charge without converting a motion to dismiss into one for summary judgment. *See Vasser v. McDonald*, 228 F. Supp. 3d 1, 9-10 (D.D.C. 2016). The court notes, however, that the nature of some of Ms. Ananth's exhibits is not entirely clear. Exhibit 6 is Ms. Ananth's December 2020 response to HUD's notice of proposed suspension. *See* ECF No. 15-10 (Pl. Ex. 6). It is not clear whether this document is part of the administrative record for any of Ms. Ananth's EEO complaints. Exhibits 7-10 appear to be documents produced in the course of EEO investigations. *See* ECF No. 15-1, at 4. "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role." *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (alteration in original) (quoting *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989)). Thus, any allegations raised for the first time in the course of an EEO investigation but not raised in the initial EEO complaint or a subsequent amendment are not necessarily exhausted.

However, at this stage, the court must draw all reasonable inferences in Ms. Ananth's favor. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015); *see Firestone*, 76 F.3d at 1209 (holding that the court may dismiss a claim on timeliness grounds "only if the complaint on its face is conclusively time-barred"). Because it is unclear when (and by whom) Exhibits 7-10 were produced, the court cannot definitively determine today that allegations raised solely in those exhibits are unexhausted or untimely.

court concludes that Ms. Ananth raised each of those incidents before HUD, and therefore exhausted those claims.  *See* Figure 1, App. A.

2.        <strong>Interference with accommodation</strong>

HUD argues that many of the incidents that make up Ms. Ananth's proposed "interference with accommodation" claim—paragraphs 99-100, 210-12, 298-99, and 314 of the proposed amended complaint—are unexhausted and untimely.[3]  *See* ECF No. 13, at 11.  The court finds that Ms. Ananth raised each of those incidents before the agency, *see* Figure 2, App. A; the remaining question is whether she did so in a timely manner.

HUD's timeliness argument turns on the distinction between hostile work environment claims and other types of discrimination claims.  *See* ECF No. 13, at 11-12.  Generally, to timely exhaust a claim, the employee must contact an EEO counselor within forty-five days of the allegedly discriminatory incident.  *See* 29 C.F.R. § 1614.105(a).  A different rule applies to hostile work environment claims.  Because a hostile work environment claim is "composed of a series of separate acts that collectively constitute one 'unlawful employment practice' . . . [i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside" the forty-five-day period.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).  "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.*

---

[3] It is unclear why HUD takes issue with paragraphs 298, 299, and 314, which do not fall under Count II (interference with accommodation).  *See* ECF No. 11-1 ¶¶ 298-99, 314.  Paragraphs 298 and 299 are part of Count I (failure to accommodate), and paragraph 314 is part of Count III (disability discrimination).  *See id.*  The court nonetheless addresses whether those incidents were properly exhausted and finds that they were.

HUD claims that Ms. Ananth raised the incidents in question as part of her hostile work environment claim, not as discrete incidents.  ECF No. 13, at 11-12.  Because different timeliness rules apply to hostile work environment and discrete accommodation claims, *see Morgan*, 536 U.S. at 115, HUD argues that "[Ms.] Ananth cannot piggyback her unexhausted accommodation claims to her hostile work environment claim," ECF No. 13, at 11.   But there is no such bootstrapping here.  Ms. Ananth raised these incidents as discrete claims, distinct from her hostile work environment claims.  *See* ECF No. 15-6 (Pl. Ex. 2), at 2 ¶ A(3) (relevant to proposed paragraph 299), ¶ B(5) (relevant to proposed paragraph 298), ¶ B(8) (relevant to proposed paragraphs 99-100, 298, 314); ECF No. 15-9 (Pl. Ex. 5), at 13-14 ¶¶ 3-4 (relevant to proposed paragraph 314), ¶ 5 (relevant to proposed paragraph 299); ECF No. 16-3 (Pl. Ex. 8), at 2-3, 9 (relevant to proposed paragraphs 210-12; raising "denial of reasonable accommodation," "discrimination," and "retaliation," but not hostile work environment).  And HUD did not dismiss these claims (as it did some of Ms. Ananth's other claims) as untimely.  *See* ECF No. 15-5 (Pl. Ex. 1), at 26-30.  Because Ms. Ananth exhausted these claims as discrete incidents, not just as part of a hostile work environment claim, and because HUD has not clearly alleged that any of these specific incidents were untimely raised, the court finds that Ms. Ananth has properly exhausted her interference claim.[4]

---

[4] HUD argues that two allegations raised as part of Ms. Ananth's hostile work environment claim in her First EEO Complaint are untimely for purposes of an interference claim "because they travel back in time significantly beyond the regulatory forty-five-day window for EEO contact." ECF No. 13, at 11-12.  The first is the allegation that, "from September 2016 to the present, [Ananth's] supervisor has been interfering with [her] for attending doctor's appointments, taking sick leave and exercising [her] reasonable accommodation (e.g. February 25, 2019, and November 2019)."  *Id.*  The second is the allegation that, "[f]rom January 2018 to the present, [Ananth's] supervisor pressured [her] to work an extremely heavy workload in violation of [her] reasonable accommodation and medical restrictions[.]"  *Id.* at 12.  But HUD does not identify which paragraphs of the proposed amended complaint track with these allegations raised during the EEO process.  *See id.*  And in fact, Ms. Ananth's interference claim before this court seems to

### 3.     Discrimination and retaliation

HUD argues that Ms. Ananth failed to exhaust disability discrimination and retaliation claims based on a 2019 performance review and a May 2019 request for training. ECF No. 13, at 12-13. However, as laid out in Appendix A, the court finds that Ms. Ananth did raise those claims at the agency level. *See* Figure 3, App. A.

HUD also takes issue with eleven paragraphs of the proposed amended complaint: paragraphs 118, 129-134, and 161, which relate to Ms. Ananth's workload, and paragraphs 313-314 and 318, which relate to her overtime. *See* ECF No. 13, at 13-14. HUD argues that because these claims were exhausted as part of a hostile work environment claim, not as discrete acts, Ms. Ananth cannot now raise those incidents as distinct discrimination and retaliation claims. *See id.*

Ms. Ananth seems to concede that her workload claims were exhausted as part of her hostile work environment claims, not as discrete discriminatory incidents. *See* ECF No. 15, at 18. She recognizes that the agency accepted her workload claims as part of Claim C, which asks whether HUD "subjected [Ms. Ananth] to hostile environment harassment." *See id.*; ECF No. 15-6 (Pl. Ex. 2), at 3 ¶ C. She also concedes that "workload claims dating back to 2016 and 2018 would be untimely." ECF No. 15, at 18. But that is not a basis for the court to deny leave to amend. The paragraphs in question—118, 129-134, and 161—may still be added to the complaint, because they are relevant to Ms. Ananth's (properly exhausted) hostile work environment claim.

---

focus on the "disparaging remarks" Ms. Chen made about her disability and requested accommodations—not on her workload, difficulties taking leave, and so on. *See* ECF No. 11-1 ¶¶ 304-07. Because HUD has not clearly identified a particular incident alleged in the proposed amended complaint which it believes to be untimely, the court finds that Ms. Ananth timely exhausted her interference claims.

That leaves Ms. Ananth's overtime claims: proposed paragraphs 313, 314, and 318.  HUD framed the alleged overtime violations both as discrete acts of discrimination and retaliation, *see* ECF No. 15-6 (Pl. Ex. 2), at 2-3 ¶ B(8), and as components of a hostile work environment, *see, e.g.*, *id.* at 3 ¶ C(8).  And there is no timeliness problem, because none of the incidents cited in paragraphs 313, 314, and 318 "predate[s] [Ms.] Ananth's EEO counseling contact by more than forty-five-days."  ECF No. 13, at 14.  Rather, the cited incidents begin (at the very earliest) on October 12, 2019—*after* Ms. Ananth initiated EEO contact for her First EEO Complaint on October 3, 2019.  *See* ECF No. 11-1 ¶¶ 5, 313-14, 318.  Given that HUD investigated the overtime allegations both as discrete discrimination claims (Claim B) and as part of a hostile work environment claim (Claim C), the court cannot "conclusively" determine that Ms. Ananth failed to properly exhaust those claims.  *See Firestone*, 76 F.3d at 1209.

## B.      Hostile Work Environment

To establish a prima facie hostile work environment claim based on disability, a plaintiff must allege that "(1) she is disabled . . . ; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her disability . . . ; (4) the harassment affected a term, condition, or privilege of employment; and (5) there is a basis for holding the employer liable for the creation of the hostile work environment."  *Floyd v. Lee*, 968 F. Supp. 2d 308, 328 (D.D.C. 2013); *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 236 (D.C. Cir. 2018) (assuming without deciding that a hostile work environment claim is available under the ADA); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) (noting that "a number of courts . . . have found [hostile work environment] claims to be cognizable under the ADA," and collecting cases).  To prevail on her hostile work environment claim, "a plaintiff must show that h[er] employer subjected h[er] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Baloch*

*v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Thus, "[t]o determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.*  "[A] few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  And, "[a]lthough a plaintiff need not plead a *prima facie* case of hostile work environment in the complaint, the 'alleged facts must support such a claim.'" *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 69 (D.D.C. 2011) (quoting *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 90-91 & n.6 (D.D.C. 2010)).

HUD argues that Ms. Ananth's hostile work environment claim could not survive a motion to dismiss, even with the additions of the proposed amended complaint, because Ms. Ananth "fails to show sufficiently severe or pervasive conduct related to [her] disability."  ECF No. 13, at 15. Ms. Ananth claims that Ms. Chen "held [her] accountable for delays and errors from contractors," "demanded absolute perfection in [her] work," made "unwarranted accusations that [she] was turning in incomplete or inaccurate work," and "failed to offer . . . resources and guidance required to properly do her job."  ECF No. 11-1 ¶¶ 345-47, 350.  Ms. Ananth also alleges that Ms. Chen made negative statements about her disability, "repeatedly complain[ing] to [Ms.] Ananth that [Ms.] Ananth's telework accommodations and medical restrictions prohibiting overtime were a nuisance to her," and "insult[ing] [Ms.] Ananth by suggesting that she lacked basic skills to do her job." *Id.* ¶¶ 348-49.

It is true that "working for a bad boss, by itself at least, is not cognizable under [the Rehabilitation Act]," *Bell v. Fudge*, No. 20-CV-2209, 2022 WL 4534603, at *6 (D.D.C. Sept. 28, 2022), and "'simple teasing,' . . . offhand comments, and isolated incidents

(unless extremely serious) will not amount to" a hostile work environment, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).   Thus, HUD may very well be correct that these allegations—taken in isolation—do not rise to the level of severity typically seen in a cognizable hostile work environment claim.

But that is not dispositive.   "Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other."  *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014); *see Vanhook v. Cooper Health Sys.*, No. 21-2213, 2022 WL 990220, at *4 (3d Cir. Mar. 31, 2022) ("Because the hostile work environment test is disjunctive, 'some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable[] conduct will contaminate the workplace only if it is pervasive.'" (alteration in original) (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017))).   And Ms. Ananth has plausibly alleged that the conduct, if not extremely severe, was pervasive.   She claims that Ms. Chen harassed her "on a daily (if not hourly) basis" for nearly three years—a factual assertion that the court must assume, at the motion-to-dismiss stage, to be true.   ECF No. 11-1 ¶ 343; *see* ECF No. 15, at 22 ("The proposed Amended Complaint outlines years of abuse by [Ms. Ananth]'s supervisors related to her disability.").   Harassing a complainant "nearly *every single day* for [more than] two years," as Ms. Ananth alleges occurred here, could give rise to a hostile work environment claim. *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 93 (1st Cir. 2018) (emphasis in original). Therefore, the court cannot conclude that it would be futile to allow Ms. Ananth to amend her hostile work environment claim.

## V.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 11, is hereby **GRANTED**, and the Clerk of Court shall docket ECF No. 11-1 as Plaintiff's Amended Complaint.  Defendant's Motion to Dismiss or for Summary Judgment in Part, ECF No. 5, is **DENIED** as moot.  Defendant shall respond to Plaintiff's amended complaint within fourteen days after it is docketed.  Fed. R. Civ. P. 15(a)(3).

**SO ORDERED**.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: July 26, 2024

Appendix A

**Figure 1: Exhaustion of Failure to Accommodate Claim**

| | **Proposed Amendment** | **Citation to Administrative Record** |
|---|---|---|
| ¶ 86 | On December 3, 2019, on the official HUD accommodation request form, Chen indicated that she approved Ananth's request "in part," but refused to specify which parts of Ananth's request she was approving and which parts she was denying and why she was denying it. | ECF No. 15-5 (Pl. Ex. 1), at 11 ¶ 4; ECF No. 16-3 (Pl. Ex. 8), at 6-7. |
| ¶ 87 | On that form, Chen stated, "Due to production responsibilities and time sensitive nature of the work, request can be accommodated up to I/l6/2020. While teleworking, please inform supervisor, ahead of time, periods when the employee will be unavailable." | ECF No. 15-14 (Pl. Ex. 10), at 2-3.[1] |
| ¶ 90 | From October 12, 2019 until August 5, 2022, Chen and Keith frequently denied and obstructed Ananth's need for 30-minute breaks by enforcing overtime, compelling her to participate in meetings during medical breaks, burdening her with excessive workloads, rejecting direct requests for breaks, and neglecting to adjust her workload following absences due to suspensions and sick leave. | ECF No. 15-5 (Pl. Ex. 1), at 27-28 ¶¶ C(2), (3), (8), (18), (22); *id.* at 41 ¶ B(5); *id.* at 42 ¶¶ C(29), (32); *id.* at 48-49 ¶ C(34); ECF No. 15-6 (Pl. Ex. 2), at 3 ¶¶ B(5), (8); *id.* at 3-6 ¶¶ C(3), (8), (16), (18), (32), (34), (49); ECF No. 15-7 (Pl. Ex. 3), at 60 ¶ 12; ECF No. 15-9 (Pl. Ex. 5), at 29 ¶¶ 3-4, 8; ECF No. 16-3 (Pl. Ex. 8), at 6-7. |

---

[1] The Report of Investigation quotes Ms. Chen as follows: "Due to production responsibilities and time sensitive nature of work, request can be accommodated up to 6/4/20. While telework, employee needs to inform supervisor, ahead of time, periods when unavailable." ECF No. 15-14 (Pl. Ex. 10), at 2-3.

| ¶ 99 | On December 16, 2019, Ananth sent an email to Ms. Paige Patrice of RAB, in which she stated she was being subjected to frequent overtime, with no limitations to her start and end times of overtime, which interfered in her reasonable accommodations and requested clarifications on which parts of her accommodation were approved vs. denied by Chen. | ECF No. 15-5 (Pl. Ex. 1), at 11 ¶ 4; ECF No. 15-6 (Pl. Ex. 2), at 3 ¶ B(8), C(8); ECF No. 15-14 (Pl. Ex. 10), at 4. |
|---|---|---|
| ¶ 100 | Ananth's concerns of overtime and her accommodations were never addressed by RAB or Chen. | ECF No. 15-5 (Pl. Ex. 1), at 11 ¶ 4; ECF No. 15-6 (Pl. Ex. 2), at 3 ¶ B(8). |
| ¶ 162 | Chen refused to reduce the workload of Ananth, despite hiring three new people in April of 2020 (Daniel Marcin, Sijia Zhang and Dale Kintzel) and again in August of 2020 with the hiring of Jose Fernandez. | ECF No. 15-5 (Pl. Ex. 1), at 25 ¶ 7; *id.* at 40 ¶ 11; *id.* at 48-49 ¶ C(34); *id.* at 52-53 ¶ 3. |
| ¶ 210 | On or around November 25, 2020, Ananth submitted a reasonable accommodation request and a note from her Doctor Robert W Thompson, to recertify her existing accommodations and extend the time that they would be granted until December 31, 2021. | ECF No. 16-3 (Pl. Ex. 8), at 9. |
| ¶ 211 | On or around November 30, 2020, Keith failed to engage in the interactive process to discuss feasibility of Ananth's accommodations and fully approved Ananth's accommodation on paper in the HUD 1000 form. | ECF No. 16-3 (Pl. Ex. 8), at 9.[2] |

---

[2] Ms. Ananth has not provided a citation to the administrative record to support the proposition that "Keith failed to engage in the interactive process to discuss feasibility of Ananth's accommodations" in late 2020.

| ¶ 212 | Despite full approval on the paper, i.e. HUD 1000 form, Chen continued to interfere in Ananth's reasonable accommodations. | ECF No. 15-7 (Pl. Ex. 3), at 25-27. |
|---|---|---|
| ¶ 266 | In response to Ananth's requests for reasonable accommodations in November 2021, Chen failed to engage in interactive process and resorted to retaliatory measures aimed at interfering, intimidating, coercing, and deterring Ananth from exercising her reasonable accommodations.   Chen's retaliatory measures included:<br><br>a) Chen and Veronica Chenik deliberately misrepresented Ananth's medical documentation, particularly ignoring her doctor's explicit recommendation for full-time telework to mitigate commute-related trauma, thus misreporting her accommodation needs,<br><br>b) Chen and Veronica Chenik denied Ananth the opportunity to appeal and imposed bureaucratic hurdles, deliberately obstructing her pursuit of reasonable accommodations,<br><br>c) Keith imposed provision of temporary telework accommodations under restrictive weekly authorizations, signaling a punitive approach,<br><br>d) Veronica Chenik threatened to file a complaint against Ananth for her persistent requests for her accommodation rights, further | ECF No. 15-9 (Pl. Ex. 5), at 8-10, 13-14.[3] |

---

[3] Ms. Ananth has not provided a citation to the administrative record to support the proposition that "Keith imposed provision of temporary telework accommodations under restrictive weekly authorizations, signaling a punitive approach" during this time period.

|  | evidencing the retaliatory atmosphere and intimidation, | |
|---|---|---|
|  | e) Veronica Chen sent an explicit email directive to Ananth, mandating her return to work despite her accommodation requests for full-time telework, contradicting the HUD 1000 form paper-based full approval of her telework accommodations, highlighting a clear disregard for her accommodation needs, | |
|  | f) Chen and Keith interfered with Ananth's reasonable accommodations by refusing her medical breaks and required her to work overtime. | |
| ¶ 267 | On November 17, 2021, Ananth submitted a request for reasonable accommodations, providing HUD Form 1000 and a doctor's letter dated November 10, 2021. The documentation supported her request for continuation of full-time telework, a lift/carry limitation of 1-2 lbs. for her right hand, and the ability to take breaks for a few minutes after every 30 minutes of desk work. | ECF No. 15-9 (Pl. Ex. 5), at 9-10. |
| ¶¶ 295, 312, 356[4] | On December 3, 2019, Defendant partially denied Plaintiffs' requests for accommodations on the HUD 1000 form without engaging in interactive process.  Additionally, the Defendant imposed conditions and stipulations even on the partial approval of Plaintiff's Reasonable Accommodation Request. | ECF No. 16-3 (Pl. Ex. 8), at 6-7. |

---

[4] Where the paragraphs in the proposed amended complaint contain the same or nearly identical text, the court addresses them together.

| ¶¶ 296, 313, 325, 357 | Between October 12, 2019, and December 31, 2019, Defendant failed to engage in interactive process, and blatantly ignored explicit advice of Plaintiff's medical professionals, and failed to accommodate Plaintiff's disability needs by mandating overtime work and work during medically necessary breaks, directly in violation of Plaintiff's needed accommodations. This failure forced the Plaintiff to forgo sleep and rest critical to surgical recovery and forgo crucial post-operative physical therapy sessions with established providers, disrupting her specialized treatment as prescribed by her doctors. This necessitated a burdensome search for alternative providers, leading to treatment interruptions for Plaintiff from December 2019 to March 2020, and exacerbation of her pain and disability. | ECF No. 15-5 (Pl. Ex. 1), at 6-7, 10-11, 14; ECF No. 16-3 (Pl. Ex. 8), at 6-7. |
|---|---|---|
| ¶ 298 | Defendant failed to follow Plaintiff's approved accommodations and interfered with approved accommodations. | ECF No. 15-5 (Pl. Ex. 1), at 6 ¶¶ 1, 3, 5; *id.* at 27-28 ¶¶ C(2)-(3), (8); *id.* at 41-42 ¶¶ B(5), C(29); *id.* at 49 ¶ C(34); ECF No. 15-6 (Pl. Ex. 2), at 3 ¶¶ B(5), (8); *id.* at 6 ¶ C(50); ECF No. 15-7 (Pl. Ex. 3), at 25-27, 60 ¶ 12; ECF No. 15-9 (Pl. Ex. 5), at 13-14 ¶¶ 3-4, 8; *id.* at 29 ¶¶ 3-4, 8. |
| ¶ 299 | At no point between October 12, 2019 and August 5, 2022, did the Defendant engage, or attempt to engage, in the interactive process with Plaintiff, despite directives from Reasonable Accommodation Branch (RAB). | ECF No. 15-5 (Pl. Ex. 1) at 48 ¶ A(3); ECF No. 15-6 (Pl. Ex. 2), at 2 ¶ A(3); ECF No. 15-9 (Pl. Ex. 5), at 13-14 ¶ 5; *id.* at 29 ¶ 5; ECF No. 16-3 (Pl. Ex. 8), at 6-9. |

**Figure 2: Exhaustion of Interference with Accommodation Claim**

| | Proposed Amendment | Citation to Administrative Record |
|---|---|---|
| ¶ 99 | *See Figure 1.* | *See Figure 1.* |
| ¶ 100 | *See Figure 1.* | *See Figure 1.* |
| ¶ 210 | *See Figure 1.* | *See Figure 1.* |
| ¶ 211 | *See Figure 1.* | *See Figure 1.* |
| ¶ 212 | *See Figure 1.* | *See Figure 1.* |
| ¶ 298 | *See Figure 1.* | *See Figure 1.* |
| ¶ 299 | *See Figure 1.* | *See Figure 1.* |
| ¶ 314 | On numerous occasions from January 1, 2020, to August 5, 2022, Defendant failed to accommodate the Plaintiff, compelling her to work overtime, work during medically necessary breaks, and work during sick leave, directly contravening her doctors' explicit recommendations and established medical restrictions and reasonable accommodations. | ECF No. 15-5 (Pl. Ex. 1), at 27-28 ¶¶ C(2), (3), (8), (18); *id.* at 41 ¶ B(5); *id.* at 42 ¶¶ C(29), (32); *id.* at 49 ¶ C(34); ECF No. 15-6 (Pl. Ex. 2), at 3 ¶ B(8); *id.* at 6 ¶ C(50); ECF No. 15-7 (Pl. Ex. 3), at 60 ¶ 12; ECF No. 15-9 (Pl. Ex. 5), at 13 ¶¶ 3-4; *id.* at 29 ¶¶ 3-4, 8. |

**Figure 3: Exhaustion of Disability Discrimination & Retaliation Claims**

| | Proposed Amendment | Citation to Administrative Record |
|---|---|---|
| ¶ 110 | When Ananth requested training for "Risk Management Professional Certificate" and "M&A Professional Certificate" in May 2019, Chen told her that she could not pursue training but instead Ananth needed to close out several tasks before her FMLA leave. | ECF No. 15-6 (Pl. Ex. 2), at 6 ¶ D(2) (reinstating this claim). |
| ¶ 112[5] | Chen again used Ananth's opposition to work overtime on October 5, 2018, due to medical appointments, as an example of her supposed lack of collaboration. Chen used this rationale to justify downgrading Ananth's 2019 overall performance rating from Outstanding to Excellent. | ECF No. 15-5 (Pl. Ex. 1), at 17 ¶ 25; *id.* at 18 ¶ 33; *id.* at 26 ¶ B(2). |
| ¶¶ 118, 161 | Similar to fiscal 2019, for fiscal years 2020, 2021, Chen required Ananth to deliver the largest number of work products every quarter. | ECF No. 15-5 (Pl. Ex. 1), at 6 ¶ 4; *id.* at 13 ¶ 8; *id.* at 25 ¶¶ 6-7; *id.* at 40 ¶ 11; *id.* at 42 ¶ C(32); *id.* at 45 ¶ 2(a); *id.* at 49 ¶ C(34); *id.* at 52-53 ¶ 3; ECF No. 15-6 (Pl. Ex. 2), at 3-5 ¶ C(3), (8), (18), (32), (34); ECF No. 15-7 (Pl. Ex. 3), at 7-8 ¶¶ 1-2; *see generally* ECF No. 15-11 (Pl. Ex. 7). |
| ¶ 129 | Similar to fiscal years 2019 and 2020, for fiscal 2021, Chen required Ananth to deliver the largest amount of work products, compared to her comparators, Marcin, Kintzel and Zhang and Jose Fernandez. | *See generally* ECF No. 15-11 (Pl. Ex. 7). |

---

[5] HUD also seems to take issue with paragraph 113 of the proposed amended complaint, *see* ECF No. 13 at 12-13, but that paragraph relates to the same (properly exhausted) performance rating claim referenced in paragraph 112, *see* ECF No. 11-1 ¶ 112-13.

| ¶ 130 | For Fiscal Year 2021, Ananth delivered 960 pages of work products, reviewed 176 files for User Acceptance Test (UAT), delivered 34 HUD OIG Audit Items (PBC) and delivered 14 model enhancements. She delivered these on time, 100% of the time on time with an accuracy rate between 95% - 100%. All with "zero" one-on-ones, "zero" phone calls, "zero" chats/text messages and "zero" helpful email responses to her questions from Chen or Keith amidst a hostile work environment. | ECF No. 15-11 (Pl. Ex. 7), at 5; ECF No. 15-10 (Pl. Ex. 6), at 15. |
|---|---|---|
| ¶ 131 | In contrast, for fiscal year 2021, Ananth's comparator Marcin only delivered 32 pages of work products, reviewed 0 files for UAT, delivered 3 HUD OIG Audit Items (PBC) and delivered 1 model enhancements, with daily and weekly chats, phone calls and emails from Chen. | ECF No. 15-11 (Pl. Ex. 7), at 5; ECF No. 15-9 (Pl. Ex. 5), at 8 ¶ 17. |
| ¶ 132 | Similarly for fiscal year 2021, Ananth's comparator Kintzel only delivered 46 pages of work products, reviewed 0 files for UAT, delivered 1 HUD OIG Audit Items (PBC) and delivered 2 model enhancements, with daily and weekly chats, phone calls and emails from Chen. | ECF No. 15-11 (Pl. Ex. 7), at 5; ECF No. 15-9 (Pl. Ex. 5), at 8 ¶ 17; ECF No. 15-10 (Pl. Ex. 6) at 15. |
| ¶ 133 | Similarly fiscal year 2021, Ananth's comparator Zhang only delivered 159 pages of work products, reviewed 0 files for UAT, delivered 5 HUD OIG Audit Items (PBC) and delivered 3 model enhancements, with daily and weekly chats, phone calls and emails from Chen. | ECF No. 15-11 (Pl. Ex. 7), at 5; ECF No. 15-9 (Pl. Ex. 5), at 8 ¶ 17; ECF No. 15-10 (Pl. Ex. 6) at 15. |
| ¶ 134 | Similarly for fiscal year 2021, Ananth's comparator Jose Fernandez only delivered 69 pages of work | ECF No. 15-11 (Pl. Ex. 7), at 5; ECF No. 15-10 (Pl. Ex. 6) at 15. |

| | | |
|---|---|---|
| | products, reviewed 14 files for UAT, delivered 0 HUD OIG Audit Items (PBC) and delivered 2 model enhancements, with daily and weekly chats, phone calls and emails from Chen. | |
| ¶ 313 | *See Figure 1.* | *See Figure 1.* |
| ¶ 314 | *See Figure 2.* | *See Figure 2.* |
| ¶ 318 | Defendant failed to pay Plaintiff about 27 hours of overtime work performed by Plaintiff and mandated by Defendant from October 15, 2019 – December 31, 2019. | ECF No. 15-5 (Pl. Ex. 1), at 14 ¶ 11; *id.* at 16 ¶¶ 19-20; *id.* at 19 ¶¶ 41-42. |