## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MADHAVI ANANTH,

      *Plaintiff,*

    v.

SCOTT TURNER,

      *Defendant.*

Civil Action No. 23-2262 (LLA)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Madhavi Ananth brings this action against Defendant Scott Turner in his official capacity as Secretary of Housing and Urban Development ("HUD"),[1] alleging failure to accommodate (Count I), interference with reasonable accommodations (Count II), disability discrimination (Count III), retaliation (Count IV), and hostile work environment (Count V) in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ECF No. 18. Before the court are HUD's motion to dismiss in part or, in the alternative, for summary judgment in part, ECF No. 20, and Ms. Ananth's motion for discovery, ECF No. 23. For the reasons described below, the court will grant in part and deny in part HUD's motion to dismiss, and deny as moot Ms. Ananth's motion for discovery.

---

[1] Ms. Ananth named former Secretary of Housing and Urban Development Marcia L. Fudge as a defendant, but the current Secretary is "automatically substituted" pursuant to Federal Rule of Civil Procedure 25(d).

## I.    FACTUAL BACKGROUND

The following factual allegations drawn from Ms. Ananth's amended complaint, ECF No. 11, are accepted as true for the purpose of evaluating the motions before the court, *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The court further takes judicial notice of documents from the administrative proceedings that have been filed on the docket, *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (explaining that "[i]n employment discrimination cases, courts often take judicial notice of [Equal Employment Opportunity Commission ("EEOC")] charges and EEOC decisions" in evaluating a motion to dismiss), and any documents incorporated by reference into Ms. Ananth's amended complaint, *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment.").

In 2014, Ms. Ananth began working for HUD as a Counterparty Risk Analyst at the Office of Government National Mortgage Association ("Ginnie Mae"). ECF No. 11 ¶ 29. In July 2016, she began developing symptoms of Neurogenic Thoracic Outlet Syndrome, Occipital Neuralgia, and Peripheral Nerve Compression. *Id.* ¶ 23. These conditions significantly limit Ms. Ananth's "ability to perform prolonged repetitive work such as keyboarding without taking breaks, push, pull, lift, and carry things with her right arm, as well as her ability to commute to work in-person on a regular basis and bearing excessive pressure around her head[] such as headphones." *Id.* ¶ 24.

Also in 2016, pursuant to a settlement agreement arising out of an Equal Employment opportunity ("EEO") complaint not at issue in this case, HUD transferred Ms. Ananth to its Economic Modeling and Analysis Division to work as a GS-14 Senior Researcher (Interdisciplinary). *Id.* ¶¶ 30, 32. After her transfer, Ms. Ananth's first-level supervisor was

Mingchao Chen, and her second-level supervisor was Gregory Keith.  *Id.* ¶¶ 34-35.  Ms. Chen and

Mr. Keith were aware of Ms. Ananth's disability and her need for accommodations.  *Id.* ¶¶ 25, 36.

Between 2019 and 2022, Ms. Ananth filed three Equal Employment Opportunity ("EEO")

complaints alleging disability discrimination.  *Id.* ¶¶ 5-16.

### A.    HUD-00004-2020

Ms. Ananth initiated EEO counseling for her first complaint, HUD-00004-2020 ("First

EEO Complaint") on October 2019 and filed a formal complaint in January 2020.  *Id.* ¶¶ 5-6.  The

First EEO Complaint initially alleged disability discrimination and retaliation and enumerated

fifty-five discrete incidents of alleged discrimination.  *See* ECF No. 15-5 (Pl. Ex. 1), at 4-21.

Broadly, Ms. Ananth claimed that Ms. Chen had harassed her for attending medical appointments,

taking sick leave, and exercising her reasonable accommodations; pressured her to manage "an

extreme workload," including significant overtime; interfered with her reasonable

accommodations, including telework; and made negative comments during her performance

review.  *See id*. at 6-8.

In March 2020, Ms. Ananth requested that HUD amend her complaint to add seven new

incidents that had occurred between January and March 2020.  *Id.* at 23-25.  HUD provided a

Notice of Partial Acceptance, accepting certain new incidents but dismissing others as untimely.

*Id.* at 26-30.  Ms. Ananth contested the partial dismissal.  *See id*. at 31-32.  EEOC Administrative

Judge Laurie Bennett ultimately ordered that some of those dismissed claims be reinstated.  *See*

ECF No. 15-6, at 6 n.2.

Ms. Ananth requested to amend her complaint three additional times to add new incidents

of alleged discrimination.  *See* ECF No. 15-5, at 38-40 (April 23, 2020 request), 45-47 (May 29,

2020 request), 52-54 (September 20, 2020 request).  HUD accepted each of those requests and

amended the First EEO Complaint accordingly.  *See id.* at 41-43 (May 6, 2020 notice of amendment), 48-50 (June 19, 2020 notice of amendment), 56-57 (September 29, 2020 notice of amendment).  Ultimately, HUD accepted four categories of claims for adjudication:

- Claim A: disability discrimination and retaliation related to failure to respond to or grant reasonable accommodation requests, and failure to engage in the interactive process.
- Claim B: disability discrimination, disparate treatment, and retaliation related to performance reviews, training, interference with a medical break, and overtime work.
- Claim C: hostile work environment claim comprised of fifty-one discrete allegations.
- Claim D: disability discrimination, disparate treatment, and retaliation related to training, and a hostile work environment claim arising from an October 2018 denial of reasonable accommodation.

ECF No. 15-6, at 2-6.

## B.    HUD-00008-2021

Ms. Ananth contacted the EEO office to file a second complaint, HUD-00008-2021 ("Second EEO Complaint") in November 2020, and she filed a formal complaint in February 2021.  ECF No. 11-1 ¶¶ 10-11.  Ms. Ananth alleged continued discrimination and retaliation, claiming that Ms. Chen's harassment and retaliation "immensely increased" after she took leave under the Family and Medical Leave Act and filed her First EEO Complaint.  *See* ECF No. 15-7, at 7-14.  HUD accepted her claims for investigation in April 2021.  *Id.* at 17-18.

Ms. Ananth filed six subsequent requests to amend her Second EEO Complaint, adding new incidents of alleged discrimination.  *See id.* at 25-26 (April 1, 2021 request), 29 (June 29, 2021 request), 33-34 (August 8, 2021 request), 40 (September 27, 2021 request), 41 (November 24, 2021 request), 42 (December 2, 2021 request); ECF No. 15 ¶¶ 22-30.  HUD accepted each of these requests for amendment.  *See* ECF No. 15-7, at 27-28 (April 14, 2021 notice

of amendment), 30-31 (July 23, 2021 notice of amendment), 35-36 (August 27, 2021 notice of amendment), 59-61 (January 3, 2022 revised notice of amendment); ECF No. 15 ¶¶ 22-30. Ultimately, HUD accepted nineteen disability discrimination, retaliation, and hostile work environment claims for adjudication. *See* ECF No. 15-8, at 2-3.

### C.    HUD-00033-2022

Ms. Ananth contacted the EEO to file a third complaint, HUD-00033-2022 ("Third EEO Complaint") in March 2022, and filed a formal complaint in May 2022. ECF No. 11-1 ¶¶ 15-16. Her Third EEO Complaint alleged continued disability discrimination, retaliation, and harassment. *See* ECF No. 15-9, at 6. HUD accepted her claims for investigation on June 10, 2022. *Id.* at 13-14.

In August 2022, Ms. Ananth requested to amend her Third EEO Complaint to include one new incident. *Id.* at 27. HUD accepted the claim for investigation in September 2022. *Id.* at 28-30.

## II.    PROCEDURAL HISTORY

In August 2023, Ms. Ananth filed suit, alleging failure to accommodate, disability discrimination, retaliation, and hostile work environment in violation of the Rehabilitation Act. ECF No. 1. In February 2024, HUD moved to dismiss in part or for summary judgment in part, arguing that several of her claims had not been administratively exhausted and that others failed to state a claim for relief. ECF No. 5. Ms. Ananth thereafter sought leave to file an amended complaint to address the deficiencies HUD had identified in her complaint and to add a claim for interference with reasonable accommodations. ECF No. 11. HUD opposed amendment, arguing that it would be futile because Ms. Ananth had not administratively exhausted her claims for failure to accommodate, interference with accommodations, discrimination, and retaliation, and

that she failed to state claim on which relief could be granted for hostile work environment.  ECF No. 13.

In July 2024, the court granted leave to amend.  ECF No. 17.  The court explained that, based on the voluminous record of administrative proceedings before HUD, there was a sufficient basis to conclude that Ms. Ananth had exhausted her claims such that amendment would not be futile, and that, if HUD disagreed, it could re-raise its exhaustion arguments in a subsequent dispositive motion.  *Id.* at 7.  The court also determined that Ms. Ananth had sufficiently alleged a hostile work environment claim such that amendment would not be futile.  *Id.* at 14.  As amended, Ms. Ananth's complaint alleges that HUD violated the Rehabilitation Act by failing to accommodate her disability (Count I), ECF No. 18 ¶¶ 290-300; interfering with her reasonable accommodations (Count II), *id.* ¶¶ 301-07; discriminating against her on the basis of her disability (Count III), *id.* ¶¶ 308-32; retaliating against her for engaging in protected activity (Count IV), *id.* ¶¶ 322-34; and creating a hostile work environment (Count V), *id.* ¶¶ 335-65.

In August 2024, HUD moved to dismiss in part or for summary judgment in part, again arguing that certain allegations were not administratively exhausted and/or failed to state a claim on which relief could be granted.  ECF No. 20.  Ms. Ananth both opposed HUD's motion and filed a motion seeking discovery.  ECF Nos. 23, 24.  Both motions are fully briefed and ripe for resolution.  ECF Nos. 20, 23 to 25, 28 to 30.

## III.    LEGAL STANDARDS

While HUD moves to dismiss in part or, in the alternative, for summary judgment in part, ECF No. 20, the court believes the motion is best considered as a motion to dismiss because the parties have not yet engaged in discovery.  *Craig v. District of Columbia*, 881 F. Supp. 2d 26, 29 n.1 (D.D.C. 2012).

HUD seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over his claims.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Absent subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that are more than "'merely consistent with' a defendant's liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 557); *see Banneker Ventures, LLC*, 798 F.3d at 1129 ("Plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully.'" (quoting *Twombly*, 550 U.S. at 556)).  "A complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'"  *Banneker Ventures, LLC*, 798 F.3d at 1129 (alterations in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

In deciding a motion under both Rule 12(b)(1) and Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor.  *Twombly*, 550 U.S. at 555;

*see Am. Nat'l Ins. Co.*, 642 F.3d at 1139.  However, a court need not "accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)); *see Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).  As noted, the court may take judicial notice of Ms. Ananth's EEO materials without converting HUD's motion to dismiss into one for summary judgment. *Golden*, 319 F. Supp. 3d at 366 n.2.

## IV.    DISCUSSION

Ms. Ananth alleges that HUD violated the Rehabilitation Act by failing to accommodate her disability (Count I), interfering with her reasonable accommodations (Count II), discriminating against her on the basis of her disability (Count III), retaliating against her for engaging in protected activity (Count IV), and creating a hostile work environment (Count V).  ECF No. 18.  HUD argues that she failed to timely administratively exhaust several of her claims, ECF No. 20, at 9-10, 13, 16, 20, and that she fails to state a claim on which relief can be granted for others, *id.* at 11-29.

### A.    Administrative Exhaustion

A plaintiff may not initiate a civil action under the Rehabilitation Act until she has exhausted her administrative remedies for each discrete discriminatory or retaliatory act. *Doak v.*

*Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015). Exhaustion allows federal agencies "to handle matters internally whenever possible." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). The exhaustion process begins when a federal employee "initiate[s] contact" with her agency's EEO counselor, which must be done within forty-five days of the alleged discriminatory or retaliatory act. 29 C.F.R. § 1614.105(a)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act"—meaning that any claim arising out of an act not raised with an EEO counselor within forty-five days cannot be pursued. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The forty-five-day rule differs slightly in the context of hostile work environment claims, which "are different in kind from discrete acts." *Id.* at 115. By nature, hostile work environment claims "involve[] repeated conduct" and "therefore cannot be said to occur on any particular day"; rather, they "occur[] over a series of days or perhaps years." *Id.* Accordingly, a hostile work environment claim is timely "[p]rovided that an act contributing to the claim occurs within the filing period." *Id.* at 117. But the act must be one that "contribut[es] to the claim," *id.*—that is, the untimely and timely actions must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts," *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

If the employee's grievance is not resolved through informal counseling, the employee may file a formal complaint, which the agency investigates and adjudicates. 29 C.F.R. § 1614.106. The issues raised in the formal administrative complaint are the ones that may be addressed in later court proceedings. *See Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 44 (D.D.C. 2022). "A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d).

After a formal complaint is filed, the agency has 180 days to investigate (or 360 days in the event of an amendment). *Id.* §§ 1614.106(e)(2), 1614.108(e) & (f). If the agency does not timely provide a final decision by the relevant deadline, the employee may file suit in federal court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b); *see Farrar v. Nelson*, 2 F.4th 986, 988 (D.C. Cir. 2021).

If the plaintiff has failed to comply with the above procedures, the agency may raise exhaustion as an affirmative defense, and it bears the burden of proof. *Bain*, 648 F. Supp. 3d at 46. "For the same reason, an agency can raise an exhaustion defense at the motion-to-dismiss stage only if it is clear from the face of the complaint or any materials that are attached to or incorporated into the complaint that the plaintiff failed to exhaust and that no exception is available." *Id.*

That said, in some instances, a Rehabilitation Act plaintiff's failure to exhaust deprives the court of jurisdiction. *See id.* Specifically, "courts lack jurisdiction over Rehabilitation Act claims when the employee has failed to satisfy the Act's statutory exhaustion requirement—that is, if the plaintiff is not 'aggrieved by the final disposition' of her administrative 'complaint' or 'by the failure [of the agency] to take final action on such complaint,' the court is without jurisdiction to consider her claim." *Id.* (alternation in original) (quoting 29 U.S.C. § 794a(a)(1)). In this circumstance, the "plaintiff bears the burden of pleading facts showing that she complied with the Act's exhaustion requirement—i.e., that she is aggrieved by a final agency disposition of a complaint that she filed or the agency's failure to act on that complaint." *Id.* (emphasis omitted).

### 1. Failure to accommodate

HUD argues that Ms. Ananth did not exhaust two allegations related to her failure-to-accommodate claim: (1) that "on December 3, 2019, Defendant partially denied Plaintiff's accommodation request and imposed conditions [and] stipulations on the partial approval of

Plaintiff's Request for an accommodation"; and (2) that from "October 12, 2019 and December 31, 2019, Defendant failed to engage in the interactive process, ignored explicit advice from Plaintiff's medical professionals, and failed to accommodate Plaintiff by mandating overtime and work during Plaintiff's medically necessary breaks." ECF No. 20, at 8-9 (citing ECF No. 18 ¶¶ 295-96). As a threshold matter, HUD characterizes Ms. Ananth's failure to exhaust these two claims as jurisdictional, *id.* at 17, but these are the type of "procedural misstep[s] that happen[] during exhaustion of the administrative process," that are not jurisdictional, *Doak*, 798 F.3d at 1104. HUD thus has the burden to prove that the claims are not exhausted. *Bain*, 648 F. Supp. 3d at 46. The court concludes that it has carried its burden on the first allegation, but not the second.

First, with regard to Ms. Ananth's allegation that on December 3, 2019, HUD partially denied her request for a reasonable accommodation, ECF No. 18 ¶ 295, Ms. Ananth did not raise this allegation in her First EEO Complaint, either initially or in a subsequent amendment, *see* ECF No. 15-5, at 5-25 (formal complaint); *id.* at 38-40, 52-54 (amendments), and, accordingly, it was not part of the claims HUD accepted, *see id.* at 26-30 (HUD's partial acceptance); ECF No. 15-6 (EEOC's list of claims). Ms. Ananth argues that this allegation is subsumed in her claim that:

> On December 18, 2019 I sent an email to Patrice Paige of Reasonable accommodations that Mingchao Chen had approved my reasonable accommodation in part. Furthermore, I also mentioned that while my doctor had authorized that I work only 40 hours per week, I am constantly pressurized by Mingchao Chen to work overtime, with no prior notice, and no specific start and end times, which interferes with my reasonable accommodations. I received no response from Patrice Paige.

ECF No. 15-5, at 11 ¶ 4. The court disagrees. To exhaust a claim, the employee must "identify the alleged incident . . . in a manner sufficient to put the agency on notice of the alleged wrongdoing." *Bain*, 648 F. Supp. 3d at 47. Ms. Ananth's allegation would not have put HUD on notice that she was contesting the partial rejection of her request for a reasonable accommodation

as opposed to complaining that, despite her accommodation, Ms. Chen was requiring her to work in excess of forty hours per week. Indeed, that is just how HUD understood this allegation, listing as one of Ms. Ananth's accepted claims that "Complainant made a complaint to Patrice Paige that . . . Ms. Chen had required her to work beyond 40 hours per week, and Ms. Paige did not respond." ECF No. 15-6, at 3 ¶ B(8)(b). Because only "[t]he issues raised in the formal administrative complaint . . . may be addressed in later court proceedings," *Holmes v. Austin*, No. 23-CV-2415, 2024 WL 4345829, at *4 (D.D.C. Sept. 30, 2024), Ms. Ananth may not proceed with the December 3, 2019 allegation that Ms. Chen partially denied her request for a reasonable accommodation.

Second, with regard to Ms. Ananth's allegations concerning the time period between October 12, 2019 and December 31, 2019, in which Ms. Ananth contends that HUD failed to engage in the interactive process, ignored the advice of her doctors, and failed to accommodate her by making her work overtime and during her medically necessary breaks, ECF No. 18 ¶¶ 295-96, the court concludes that Ms. Ananth properly exhausted these claims. Ms. Ananth alleged in her First EEO Complaint that at various points between October and December 2019, Ms. Chen asked her to work in excess of her medical restrictions, ECF No. 15-5, at 13 ¶ 9, and made her work overtime, *id.* at 6 ¶ 5. HUD accepted these allegations in support of her claims of disability discrimination, retaliation, and hostile work environment, ECF No. 15-6, at 3 ¶¶ B(8)(a) to (c) (discrimination and retaliation), C(3) (hostile work environment), C(8) (hostile work environment) & n.1. While HUD argues that Ms. Ananth did not expressly connect these allegations to the failure-to-accommodate claim she now brings in court, it is sufficient that she put HUD on notice of the factual basis of her claims. *Bain*, 648 F. Supp. 3d at 47 (rejecting the defendants' claim that the plaintiff had not exhausted her discrete discrimination claims "merely

because they were asserted under a hostile work environment label in her administrative process"). Accordingly, Ms. Ananth may rely on these allegations in support of her failure-to-accommodate claim.

## 2.    Interference with accommodation

HUD argues that Ms. Ananth did not raise a discrete claim of interference with reasonable accommodations at the administrative level.  ECF No. 20, at 11.  In her First EEO Complaint, Ms. Ananth alleged: (1) that "the agency failed to provide a response to [her] January 21, 2020, accommodation request"; (2) that "as of May 20, 2020, the agency failed to engage in the interactive process"; (3) "that her manager required her to attend a meeting that interfered with her reasonable accommodation medical break"; and (4) "that her supervisor pressured her to work overtime in December 2019."  ECF No. 20, at 11 (citing First EEO Complaint).  In her Third EEO Complaint, Ms. Ananth alleged that "on February 2, 2022, and April 6, 2022, [her] supervisor required [her] to attend meetings that interfered with [her] accommodation."  *Id.* at 12-13 (citing Third EEO Complaint).  While HUD appears to admit that these allegations could support a claim of interference, it argues that Ms. Ananth only advanced these allegations during the EEO proceedings in support of a general claim of discrimination, which precludes her from raising an independent interference claim in court.  ECF No. 20, at 11.  The court disagrees.  As just explained above, when the plaintiff puts the agency on notice of the factual basis of her claims, she is not thereafter limited to the legal theory asserted before the agency.  *Bain*, 648 F. Supp. at 47.

Separately, HUD argues that Ms. Ananth's complaint contains two allegations—that she was denied a reasonable accommodation in November 2020 and was required to work while on sick leave in March 2021—that are not exhausted because Ms. Ananth never raised them in her EEO complaints or amendments thereto.  ECF No. 20, at 13.  The court agrees as to the

November 2020 allegation, which does not appear to have been formally presented to the agency during the EEO proceedings. While Ms. Ananth mentioned the denial of a reasonable accommodation in November 2020 in an affidavit she submitted as part of the EEO proceedings, ECF No. 16-3, at 9, that is not a sufficient for exhaustion purposes since it was not part of a formal charge. This claim thus fails for lack of exhaustion. But the court concludes that Ms. Ananth did exhaust her claim that she was forced work on her March 18, 2021 sick day, because she included that allegation in her April 1, 2021 amendment to her February 2021 EEO complaint. ECF No. 15-7, at 25.

### 3.    Discrimination and retaliation

Ms. Ananth alleges multiple discrete instances of discrimination and retaliation, but HUD argues that only three are not exhausted: (1) the denial of the December 3, 2019 accommodation request; (2) claims related to Ms. Ananth's heavy workload, which required her to work "overtime and work during medically necessary breaks"; and (3) HUD's failure to pay Ms. Ananth for twenty-seven hours of overtime worked between October 15, 2019, and December 31, 2019. ECF No. 20, at 13-21. The court has already concluded that Ms. Ananth did not exhaust a claim related to the partial acceptance of her accommodation request on December 3, 2019, *see supra* Part IV.A.1, so the court will only address the latter two.

*Workload.* HUD argues that Ms. Ananth cannot bring discrete claims for discrimination and retaliation based on her workload because she only raised them below as part of a hostile work environment claim. For the reasons already explained, that argument fails. *See Bain*, 648 F. Supp. 3d at 47. HUD separately argues that any discrete workload-based discrimination or retaliation claims preceding the forty-five-day period before Ms. Ananth had her first informal EEO contact in October 2019 are untimely. ECF No. 20, at 16. The court agrees, because each discrete claim

14

of discrimination or retaliation must be exhausted by contacting an EEO counselor within forty-five days of the incident. *Morgan*, 536 U.S. at 113. Ms. Ananth may, of course, rely on any untimely workload allegations to support her claim of hostile work environment, and she may proceed on any workload-related claims of discrimination or retaliation that HUD has failed to challenge on exhaustion grounds. *See, e.g.*, ECF No. 15-5, at 48-50, 56-57; ECF No. 15-7, at 17-18, 59-61.

*Overtime payment*. As for Ms. Ananth's allegation that she was not paid for twenty-seven hours of overtime worked between October 15, 2019, and December 31, 2019, the court again concludes that this can form the basis of discrete discrimination and retaliation claims. *See Bain*, 648 F. Supp. 3d at 47. The court also notes that Ms. Ananth exhausted this claim by raising it in her formal EEO complaint on January 17, 2020, ECF No. 15-5, at 14 ¶ 11, 16 ¶ 20.

### B.    Rule 12(b)(6)

### 1.    Failure to accommodate

To state a claim for failure to accommodate under the Rehabilitation Act, a plaintiff must plead that "(1) she had a qualifying disability within the meaning of the statute, (2) her employer had notice of the disability, (3) with reasonable accommodation, she could perform the essential functions of the position, and (4) she requested an accommodation but the employer denied her request." *Graffius v. Shinseki*, 672 F. Supp. 2d 119, 125 (D.D.C. 2009). Ms. Ananth alleges that HUD failed to accommodate her: (1) between October 12, 2019 and December 31, 2019 by failing to engage in the interactive process, ignoring explicit advice from her doctors, and requiring her to work in excess of her medical restrictions; (2) between January 1, 2020 and August 5, 2022, when it "failed to accommodate the Plaintiff, compelling her to work overtime, work during medically necessary breaks, and work during sick leave, directly contravening her doctors' explicit

recommendations and established medical restrictions and reasonable accommodations"; (3) when it "failed to follow Plaintiff's approved accommodations and interfered with approved accommodations"; and (4) when it did not "engage, or attempt to engage, in the interactive process with Plaintiff, despite directives from the Reasonable Accommodation Branch (RAB)." ECF No. 18 ¶¶ 295-99.

HUD does not dispute that Ms. Ananth had a disability, that it was aware of her disability, and that she could perform the functions of her job with reasonable accommodations. The court will therefore focus solely on whether Ms. Ananth has plausibly alleged that HUD denied her requests for reasonable accommodations.

HUD addresses the merits of only one of Ms. Ananth's reasonable accommodations claims: that "the agency failed to provide a response to [her] reasonable accommodation request submitted on January 21, 2020." ECF No. 20, at 10 (quoting ECF No. 15-5, at 26). HUD explains that even though Ms. Ananth's request for accommodations was partially denied, *see* ECF No. 18 ¶ 172, Ms. Ananth worked from home "full time under an approved request for a reasonable accommodation," and her "Supervisor's comment requiring Plaintiff to inform her supervisor ahead of time of periods of unavailability does not constitute a denial" of a reasonable accommodation, ECF No. 20, at 10.

While it may be true that the imposition of reasonable conditions—such as requiring Ms. Ananth to let a supervisor know when she would be unavailable—is not a denial or a reasonable accommodation, HUD misrepresents the nature of Ms. Ananth's accommodations requests. Ms. Ananth alleges that she requested not only the ability to work from home—an accommodation she seems to have been granted—but also medical breaks and no mandatory overtime. ECF No. 18 ¶ 172. She further alleges that when she filed her January 21, 2020 request,

she did not receive a response until May 2020, *id.* ¶¶ 173-74, and that before and after that, she was frequently required to work overtime and was unable to take the medically necessary breaks, *see, e.g.*, *id.* ¶¶ 177, 179-84. Accordingly, although Ms. Ananth's request to telework was seemingly granted, Ms. Ananth has sufficiently alleged that other aspects of her January 21, 2020 request for reasonable accommodations were not granted, and those allegations are sufficient to survive a motion to dismiss.

## 2.    Interference with reasonable accommodations

The Rehabilitation Act "makes it unlawful for a federal employer 'to coerce, intimidate, threaten[,] or interfere with any individual' in the exercise or enjoyment of 'any right granted' under the statute." *Menoken v. Dhillon*, 975 F.3d 1, 9 (D.C. Cir. 2020) (emphasis omitted) (quoting 42 U.S.C. § 12203(b)). Interference is distinct from retaliation, *id.* at 9-10, and includes an agency's failure to "engage in good faith to determine what accommodation might be appropriate," deliberate attempts to delay the processing of a request for a reasonable accommodation, and leveraging an employee's need for an accommodation to extract other concessions, *id.* at 11. For the same reasons that Ms. Ananth has stated a claim for failure to accommodate, she has also stated a claim for interference with accommodations.

Namely, Ms. Ananth sufficiently alleges that HUD failed to "engage in good faith to determine what accommodation might be appropriate." *Id.* at 10. For example, when Ms. Chen informed Ms. Ananth that her January 2020 request for accommodations was granted "in part," she did not tell her which portions were being denied and why. ECF No. 18 ¶ 172. And despite being granted an accommodation, Ms. Ananth alleges that she was required to work overtime and skip medically necessary breaks, *see, e.g.*, *id.* ¶¶ 177, 179-84, with no interactive process to resolve these issues and find an accommodation that suited both Ms. Ananth and her employer.

Additionally, Ms. Ananth alleges that Ms. Chen "deliberate[ly] attempt[ed] to delay the processing of a request for a reasonable accommodation" by not responding to Ms. Ananth's January 21, 2020 request until May 2020, and, in the interim, making derogatory comments to Ms. Ananth about her need for accommodations.  *Id.* ¶¶ 174, 177-78.  Ms. Ananth has therefore stated a claim for interference with reasonable accommodations sufficient to withstand a motion to dismiss.

### 3.    Discrimination

The  Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of . . . [her] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a).   A plaintiff bringing a discrimination claim under the Rehabilitation Act must allege that she is disabled or perceived to be disabled, that she suffered an adverse employment action, and that a causal connection exists between her disability and the adverse employment action.  *Doak v. Johnson*, 19 F. Supp. 3d 259, 271 (D.D.C. 2014), *aff'd*, 798 F.3d 1096 (D.C. Cir. 2015).

With regard to Ms. Ananth's discrimination claims, the parties do not dispute the first prongs, so the court will focus on the latter prongs.  The Supreme Court recently clarified the standard for an actionable adverse employment action in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).  There, the Court explained that a plaintiff must simply allege "some harm" regarding the terms or conditions of her employment to support a discrimination claim.  *Id.* at 350.  That holding is largely consistent with the D.C. Circuit's decision in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), in which the Circuit held that a plaintiff need only show some change with respect to the terms and conditions of her employment (as opposed to an "objectively tangible harm") to plead an adverse action.  35 F.4th at 874-75.  While *Muldrow* and

*Chambers* concerned Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, *see* 601 U.S. at 346; 35 F.4th at 870, courts in this Circuit have "long interpreted" Title VII and the Rehabilitation Act in parallel, *Bain*, 648 F. Supp. 3d at 51.

Ms. Ananth must also show a causal connection between her protected status and the alleged adverse actions. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). One way that a plaintiff can satisfy this burden is "by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). While the burden is "not onerous" at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator. *SS & T, LLC v. Am. Univ.*, No. 19-CV-721, 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)). "A plaintiff's assertion that [she] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough." *Id.* at *5 (second alteration in original) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)); *see Keith v. U.S. Gov't Accountability Off.*, No. 21-CV-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (granting a motion to dismiss for failure to state a claim and reasoning that "to plausibly plead the causation element [through similarly situated comparators], [the plaintiff] must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees").

HUD argues that Ms. Ananth fails to sufficiently allege adverse action for some of her claims and fails to allege a causal connection for others. The court will address each in turn.

### a.    Accommodations

With regard to Ms. Ananth's claims regarding her denied accommodation requests, HUD argues that "not being able to work a preferred work schedule is not an adverse employment

action," and that Ms. Ananth "has not pled facts sufficient to raise an inference that the schedule she worked according to her approved accommodation requests impacted the terms or conditions of her employment."  ECF No. 20, at 15-16.

The court disagrees.  Not being able to work one's preferred schedule can "meet the standard of 'some harm' to the terms and conditions of her employment . . . [if] they represent changes that negatively impact her work environment."  *Mitchell v. Garland*, No. 23-CV-2412, 2024 WL 3251217, at *4 (D.D.C. July 1, 2024) (quoting *Muldrow*, 601 U.S. at 350).  Ms. Ananth repeatedly alleges that her work schedule directly affected her health, ECF No. 18 ¶ 47, which is sufficient to survive a motion to dismiss.  *Id.*  And because HUD does not argue that Ms. Ananth has not alleged a causal connection between this adverse action and her disability, the claim may proceed.

*b.*     *Workload*

Regarding Ms. Ananth's claims that her workload constituted discrimination, HUD only argues that Ms. Ananth has failed to establish a causal connection between her workload and her disability.  ECF No. 20, at 16.  The court disagrees, because Ms. Ananth alleges that Ms. Chen "repeatedly complained to [Ms.] Ananth that [her] telework accommodations and medical restrictions prohibiting overtime were a nuisance to her," ECF No. 18 ¶ 223, "insulted [Ms.] Ananth by suggesting that she lacked basic skills to do her job," *id.*, "failed to offer Ananth resources and guidance required to properly do her job," *id.*, "failed to reduce Ananth's workload, even when she was critically overworked," *id.*, and "neglect[ed] to adjust her workload following absences due to suspensions and sick leave," *id.* ¶ 226.  These allegations are sufficient at the motion-to-dismiss stage to suggest that Ms. Chen increased Ms. Ananth's workload because she was frustrated that she had to accommodate her disability.

### c.    Overtime

As for Ms. Ananth's argument that HUD did not pay her for twenty-seven hours of overtime worked between October 15, 2019, and December 31, 2019, ECF No. 18 ¶ 362, HUD argues only that Ms. Ananth "fails to allege any facts showing how this period of overtime impacted a term or condition of her employment." ECF No. 20, at 16-17. Not so. As noted, courts interpret the Rehabilitation Act and Title VII in tandem, and Title VII prohibits discrimination with respect to "*compensation*, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). One could hardly imagine a more fundamental aspect of employment than the ability to be properly compensated for hours worked. Accordingly, this claim also survives HUD's motion to dismiss.

### d.    Training

Ms. Ananth alleges that HUD denied her access to the Excellence in Government ("EIG") Fellows Program, threatened the program official who was supporting her candidacy, and failed to provide a letter of reference for it. ECF No. 18 ¶¶ 251-65. HUD questions "how the denial of this training impacted the terms, conditions, or privileges of her employment," ECF No. 20, at 17, but Ms. Ananth convincingly alleges that participation in the program would have equipped her with "349 hours of training," ECF No. 18 ¶ 264, and provided her with additional qualifications for a Director-Level GS-15 role, *id.* ¶ 265. These are sufficient allegations of "some harm" to the terms and conditions of Ms. Ananth's employment to withstand a motion to dismiss. *Muldrow*, 601 U.S. at 977; *see Stewart v. U.S. Dep't of Agric.*, No. 23-CV-1194, 2024 WL 4332618, at *2, 5 (D.D.C. Sep. 27, 2024) (explaining that denying an employee a training opportunity that "would have assisted with strengthening her skill for advancement" constituted an adverse action).

*e.*    *Cash awards*

Ms. Ananth also alleges that her supervisors discriminated against her by denying her non-rating-based cash awards from October 2019 to August 2022. While Ms. Chen had nominated Ms. Ananth for three such awards in 2017, 2018, and 2019, ECF No. 18 ¶ 234, Ms. Chen stopped nominating her after she submitted her First EEO Complaint in October 2019. *Id.* ¶ 239. Meanwhile, Ms. Chen continued to nominate "each and every one of [Ms.] Ananth's comparators" in 2021 and 2022. *Id.* ¶ 241.

"[D]enial of even a purely discretionary bonus can be actionable." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009). But, without more, Ms. Ananth's allegations are insufficient to state a *discrimination* claim as opposed to a *retaliation* claim. While she asserts that her comparators continued to receive these awards, Ms. Ananth does not connect her lack of nomination to her disability. *See id.* ¶¶ 234-44. More fundamentally, she fails to even allege that she independently met the criteria necessary to receive the awards in subsequent years. *Id.* Ms. Ananth merely relies on the fact that she had received non-rating-based awards in previous years. But receipt of an award in years past is no guarantee of continued receipt in the future. Accordingly, the court will dismiss this claim.

*f.*    *Suspensions*

Ms. Ananth alleges that she was twice suspended Ms. Ananth alleges that she was twice suspended—once by Ms. Chen in September 2021 and again by Mr. Keith in January 2022. ECF No. 18 ¶ 140. HUD does not argue that the suspensions were not adverse employment actions; instead, it argues that Ms. Ananth has failed to connect her two suspensions to her disability. ECF No. 20, at 18. The court concludes that, for the purposes of a motion to dismiss, Ms. Ananth has sufficiently established a causal connection between her disability and her suspensions.

Specifically, she alleges that one of her suspension charging documents "falsely accus[ed her] of causing inconvenience by necessitating the rescheduling of meetings to address her accommodation needs." ECF No. 18 ¶ 364.

While HUD argues that it "had [a] legitimate non-discriminatory reason[] for suspending [Ms. Ananth]," ECF No. 20, at 18, and Ms. Ananth contends that HUD's stated reasons for her suspensions were "pretextual," *id.* at 21, these are arguments better addressed after discovery either at summary judgment or trial.

### g.    Evaluations

Ms. Ananth alleges that HUD systematically downgraded her performance evaluation ratings, which resulted in lower performance-based bonuses in 2019, 2020, and 2021. ECF No. 18 ¶¶ 107-48. While HUD concedes that Ms. Ananth's "claims related to her performance plans and evaluations may be connected to an adverse employment action in the form of a lower bonus," ECF No. 20, at 18, it maintains that Ms. Ananth has not sufficiently stated a claim because, "she received the second highest rating of Excellent" and "fail[ed] to identify any discriminatory terms or language in her performance plans or evaluations," *id.* The court disagrees with HUD on the latter point. Ms. Ananth alleges, among other things, that Ms. Chen "downgraded [her] performance evaluations based on taking sick leave and disability leave," but did not do so for her non-disabled comparators, ECF No. 18 ¶ 168-69; that even though the quality of her work remained the same, Ms. Chen "provided unwarranted accusations that Ananth was turning in incomplete or inaccurate work," *id.* ¶ 222; and that none of her non-disabled "coworkers had similar performance plans or were held to standards requiring absolute perfection," *id.* ¶ 156. These allegations suffice to support a reasonable inference that Ms. Ananth's performance plans

and evaluations were affected by discrimination based on her disability for purposes of a motion to dismiss.

### 4.    Retaliation

To allege retaliation in violation of the Rehabilitation Act, the plaintiff must show that she (1) engaged in statutorily protected activity; (2) suffered a materially adverse action by her employer; and (3) there is a but-for causal link between the two. *Congress v. Gruenberg*, 643 F. Supp. 3d 203, 229 (D.D.C. 2022); *see Baloch*, 550 F.3d at 1196. While *Muldrow* changed the adverse-action standard for discrimination claims, the Court clarified that the threshold did not change for retaliation claims and the "materially adverse" standard thus remains. *Muldrow*, 601 U.S. at 357-58.

#### a.    Accommodations

HUD argues, as before, that because Ms. Ananth's "accommodation requests were never denied, and [because she] worked from home uninterrupted at least from the date that she submitted the January 2020 request through the duration of her employment," Ms. Ananth has not experienced a materially adverse action. ECF No. 20, at 19. This argument fails. In order for an action to be materially adverse, it need only have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Ms. Ananth alleges that HUD's failure to accommodate her "forced [her] to forgo sleep and rest critical to surgical recovery and forgo crucial post-operative physical therapy sessions with established providers, disrupting her specialized treatment as prescribed by her doctors . . . leading to treatment interruptions for Plaintiff from December 2019 to March 2020, and exacerbation of her pain and disability." ECF No. 18 ¶ 325. The court determines that a substantial threat to one's

health and wellbeing, as well as interruptions to medical treatment that cause the exacerbation of pain, are clearly the type of consequences that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Mogenhan*, 613 F.3d at 1166 (quoting *Burlington Northern*, 548 U.S. at 68). Accordingly, for purposes of the motion to dismiss, the court is satisfied that Ms. Ananth has sufficiently stated a claim for failure to accommodate in retaliation for a protected activity.

### b.    Cash awards

While Ms. Ananth alleges that Ms. Chen did not select her for cash awards after she filed her First EEO Complaint, ECF No. 18 ¶ 239—which makes this a closer call than her discrimination claim, for which she had no substantiating allegations—the court nevertheless must dismiss this claim. That is because Ms. Ananth does not allege that she satisfied the requirements for the awards in the first place. And although she tries to draw a temporal connection between First EEO Complaint and the lack of a nomination in 2020, she admits that *no* comparable employees received non-rating-based cash awards that year. *Id.* ¶ 244. Ms. Ananth's allegations are simply too threadbare to survive a motion to dismiss.

### c.    Training

The denial of a training opportunity—like participation in the EIG Fellows Program— "does not generally constitute an adverse employment decision" in the retaliation context unless it results in "a resultant 'material change in . . . employment conditions, status, or benefits.'" *Morales v. Gotbaum*, 42 F. Supp. 3d 175, 202 (D.D.C. 2014) (alteration in original) (first quoting *Warner v. Vance-Cooks*, 956 F. Supp. 2d 129, 171 (D.D.C. 2013); then quoting *Dorns v. Geithner*, 692 F. Supp. 2d 119, 133 (D.C. Cir. 2010)). As in the discrimination context, Ms. Ananth's training-related claim meets the requisite retaliation standard.

Relying on *Reed-Morton v. Fudge*, No. 22-CV-1079, 2022 WL 16571237 (D.D.C. Nov. 1, 2022), HUD asserts that the denial of a training opportunity is not a materially adverse action. ECF No. 20, at 20. In *Reed-Morton*, the plaintiff brought a retaliation claim based on the denial of a free Excel training. *Id.* at *5. The court dismissed her claim because she had not alleged that she "lacked the skills or knowledge to complete her work" without the training. *Id.* Ms. Ananth's situation is readily distinguishable in two respects: (1) Ms. Ananth has alleged that the "349 hours of training" in the EIG program would have provided her with additional qualifications for promotion to a Director-level role, ECF No. 18 ¶¶ 264-65; and (2) Ms. Chen failed to provide Ms. Ananth with a recommendation letter for a job training program related to her career advancement, *id.* ¶¶ 251-63; *cf. Passer v. Am. Chemical Soc.*, 935 F.2 322, 331 (D.C. Cir. 1991) (holding that "efforts by an employer to scuttle a former employee's search for a new job, such as by withholding a letter of recommendation . . . can constitute illegal retaliation"). Accordingly, Ms. Ananth may proceed with this claim.

### d.    Workload

The court also concludes that Ms. Ananth has alleged sufficient facts to survive a motion to dismiss on her workload-based retaliation claim. She claims that, in the few months immediately after she first engaged in the informal EEO process in October 2019, Ms. Chen assigned her significant amounts of overtime in violation of her accommodations and medical restrictions. ECF No. 18 ¶¶ 92, 94-97. Ms. Ananth also alleges that, during some of these overtime shifts, she was forced to work on non-urgent matters that did not need to be completed outside of normal working hours. *Id.* ¶ 97. She also alleges that, during this period, she worked roughly seven times the amount of overtime as one of her coworkers and that another coworker worked no overtime at all. *Id.* ¶¶ 92, 101, 106. Such long hours were not an "essential or a

26

marginal function" of her job description, and were "unusual" for someone in her role.  *Id.* ¶¶ 102-03.

Given that Ms. Ananth experienced a dramatic change in her workload almost immediately after beginning the EEO process, the court concludes that she has alleged enough to survive a motion to dismiss.  *See Brownfield v. Bair*, 541 F. Supp. 2d 35, 45 (D.D.C. 2008) (finding a "sufficient causal connection" where the plaintiff's workload changed "immediately" after she filed a formal EEO complaint).  While "[i]t is not out of the ordinary for employees to have been expected to shoulder an extra load on occasion," *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 45 (D.D.C. 2001), the close temporal proximity of the abnormal overtime assignments creates an inference that Ms. Chen had a retaliatory motive.  This is especially so given that Ms. Ananth's job normally did not require overtime at all.  The potential chilling effect of such conduct is obvious, as "[a] reasonable employee might well be dissuaded from filing an EEO complaint if she thought her employer would retaliate by burying her in work."  *Mogenhan*, 613 F.3d at 1166. Therefore, the court concludes that this claim survives.

*e.     Overtime*

Finally, regarding Ms. Ananth's claim that HUD's failure to pay her overtime for twenty-seven hours between October 2019 and December 2019 was retaliation for a protected activity, ECF No. 18 ¶ 362, HUD's only argument is that Ms. Ananth did not administratively exhaust this claim, ECF No. 20, at 21.  Because the court has already rejected that argument, *see supra* Part IV.B.3.c, the claim may proceed.

### 5.     Hostile work environment

To establish a prima facie hostile work environment claim based on disability, a plaintiff must allege that "(1) she is disabled . . . ; (2) she was subjected to unwelcome harassment; (3) the

27

harassment occurred because of her disability . . . ; (4) the harassment affected a term, condition, or privilege of employment; and (5) there is a basis for holding the employer liable for the creation of the hostile work environment." *Floyd v. Lee*, 968 F. Supp. 2d 308, 328 (D.D.C. 2013); *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 236 (D.C. Cir. 2018) (assuming without deciding that a hostile work environment claim is available under the ADA); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) (noting that "a number of courts . . . have found [hostile work environment] claims to be cognizable under the ADA," and collecting cases). To prevail on her hostile work environment claim, "a plaintiff must show that h[er] employer subjected h[er] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Thus, "[t]o determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* "[A] few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). And, "[a]lthough a plaintiff need not plead a prima facie case of hostile work environment in the complaint, the 'alleged facts must support such a claim.'" *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 69 (D.D.C. 2011) (quoting *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 90-91 & n.6 (D.D.C. 2010)).

HUD argues that Ms. Ananth's hostile work environment claim does not survive a motion to dismiss because "a plaintiff must plausibly allege that "the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment," and "not

only must the plaintiff subjectively perceive the environment to be abusive, but it must also be objectively hostile or abusive." ECF No. 20, at 21 (quoting *Harris*, 510 U.S. at 21).

However, Ms. Ananth claims that Ms. Chen "held [her] accountable for delays and errors from contractors," "demanded absolute perfection in [her] work," made "unwarranted accusations that [she] was turning in incomplete or inaccurate work," and "failed to offer . . . resources and guidance required to properly do her job." ECF No. 18 ¶¶ 345-47, 350. Ms. Ananth also alleges that Ms. Chen made negative statements about her disability, "repeatedly complain[ing] to [Ms.] Ananth that [Ms.] Ananth's telework accommodations and medical restrictions prohibiting overtime were a nuisance to her," and "insult[ing] [Ms.] Ananth by suggesting that she lacked basic skills to do her job." *Id.* ¶¶ 348-49.

It is true that "working for a bad boss, by itself at least, is not cognizable under [the Rehabilitation Act]," *Bell v. Fudge*, No. 20-CV-2209, 2022 WL 4534603, at *6 (D.D.C. Sept. 28, 2022), and "'simple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). Thus, HUD may very well be correct that these allegations—taken in isolation—do not rise to the level of severity typically seen in a cognizable hostile work environment claim.

But that is not dispositive. "Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014); *see Vanhook v. Cooper Health Sys.*, No. 21-2213, 2022 WL 990220, at *4 (3d Cir. Mar. 31, 2022) ("Because the hostile work environment test is disjunctive, 'some harassment may be severe enough to contaminate an

environment even if not pervasive; other, less objectionable[] conduct will contaminate the workplace only if it is pervasive.'" (alteration in original) (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017))). And Ms. Ananth has plausibly alleged that the conduct, if not extremely severe, was pervasive. She claims that Ms. Chen harassed her "on a daily (if not hourly) basis" for nearly three years—a factual assertion that the court must assume, at the motion-to-dismiss stage, to be true. ECF No. 18 ¶ 343. Harassing a complainant "nearly every single day for [more than] two years," as Ms. Ananth alleges occurred here, plausibly states a hostile work environment claim. *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 93 (1st Cir. 2018).

The content of that harassment, which the court must also accept as true, specifically targeted Ms. Ananth's disability. For example, Ms. Ananth complained that Ms. Chen interfered with her attempts to seek medical care for her disability and pressured her to complete tasks that violated her medical restrictions. *See* ECF No. 15-6, at 2-6. Ms. Chen allegedly went so far as to ask Ms. Ananth to reschedule an important leg surgery so that she could continue working. ECF No. 18 ¶ 70-71.

These incidents, especially "when described in full and considered alongside [Ms. Ananth]'s other allegations, suggest the kind of serious and objectively . . . humiliating conduct that supports a hostile work environment claim." *Craig v. District of Columbia*, 74 F. Supp. 349, 371 (D.D.C. 2014) (internal quotation marks omitted). Taken altogether, the amended complaint describes a pervasive, multi-year pattern of Ms. Ananth's supervisors' repeatedly delaying the approval of her accommodations, pushing her to avoid using the accommodations she did have, or directly asking her to complete work in violation of those accommodations. *See, e.g.*,

ECF No. 18 ¶¶ 94-97, 163, 181, 196, 227, 231, 266, 283, 286-89.  When she *did* take advantage of them, her supervisors reprimanded or insulted her for doing so.  *Id.* ¶¶ 223, 230.

Even after Ms. Ananth's doctor told her to abide by strict medical limitations, Ms. Chen still demanded that Ms. Ananth adhere to an onerous work schedule, forcing her to miss "medical breaks, resting, sleep[,] and post operative physical therapy appointments [that were] critical for her surgical recovery."  *Id.* ¶¶ 93, 96.  All of these transgressions worsened significantly after Ms. Ananth returned from medical leave in October 2019.  *Id.* ¶¶ 217-26.  Ms. Chen allegedly harassed her "on a daily (if not hourly) basis" about her work schedule, her work product, and her attempts to abide by certain medical restrictions.  *Id.* ¶ 218-24.  Based on these allegations, the court concludes that these incidents were "frequen[t]," "humiliating," and "unreasonably interfere[d] with [Ms. Ananth]'s work performance."  *Harris*, 510 U.S. at 23.  She therefore has pleaded enough facts to survive a motion to dismiss on her hostile work environment claim.

### C.    Motion for Discovery

In light of the foregoing, the court will deny Ms. Ananth's motion for discovery, ECF No. 23, as moot.

### V.    CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part HUD's Motion to Dismiss,  ECF No. 20, and will deny Ms. Ananth's Motion for Discovery, ECF No. 23,  as moot.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 31, 2025